**FILED**
**Nov 28, 2018**
**02:47 PM(CT)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | |
|---|---|
| **BRIAN JACKSON,** ) | **Docket No. 2018-07-0450** |
| Employee, ) | |
| v. ) | |
| **PRAXIS INDUSTRIES, INC.** ) | |
| Employer, ) | **State File No. 7257-2018** |
| and ) | |
| **ZURICH INS. CO.,** ) | |
| Carrier. ) | **Judge Robert Durham** |

---

## EXPEDITED HEARING ORDER GRANTING BENEFITS

---

This case came before the Court for an Expedited Hearing on November 21, 2018. The primary issue is whether Mr. Jackson is entitled to surgery recommended by his authorized physician, Dr. Randall Frazier, for an alleged work injury to his right knee. The Court holds the opinions of the utilization review physician and the Bureau's medical director are insufficient to overcome the presumption afforded Dr. Frazier as authorized physician.

### History of Claim

On November 7, 2017, Mr. Jackson sprained his left ankle while working for Praxis. He reported the injury and later treated with an urgent care clinic, but he did not receive a panel of orthopedists from Praxis until January 2018. In the meantime, he allegedly developed pain in his right knee due to limping because of his ankle injury. He testified he never suffered from knee pain before his ankle sprain.

Mr. Jackson chose Dr. Frazier from the panel. He noted Mr. Jackson complained of "popping or clicking" in his knee and suffered from knee swelling and tenderness along the meniscal line. A McMurray test was positive for a possible meniscal tear, and Dr. Frazier noted an antalgic gait. He provided steroid injections and ordered physical therapy. Although the treatment provided some initial relief, Mr. Jackson soon experienced renewed pain as well as "catching and grinding" in his knee. An MRI of the right knee revealed severe medial compartment degenerative change with a broad area of

1

full-thickness chondral loss and associated edema. The MRI also showed "mild degenerative free edge fraying of the medial meniscus."

After reviewing the MRI, Dr. Frazier addressed causation. He stated that while Mr. Jackson's right knee arthritis pre-existed his ankle injury, he was asymptomatic before that event. Thus, Dr. Frazier gave his opinion to a reasonable degree of medical certainty that "at least 75% of his symptoms" were due to an aggravation of his pre-existing knee condition caused by the left ankle injury. He recommended an arthroscopy to debride and clean out the degenerative areas in Mr. Jackson's knee.

Praxis then asked orthopedist Gregory Goldsmith for a utilization review as to the need for a right knee arthroscopy with partial medial meniscectomy. In his report, Dr. Goldsmith cited four criteria from the Official Disability Guidelines (ODG) in determining the need for a meniscectomy: (1) Conservative care such as physical therapy and medication or activity modification; (2) subjective findings of pain, swelling, give-way sensations or popping and clicking; (3) objective findings of a positive McMurray's test, joint line tenderness, effusion, or crepitus and, (4) meniscal tear on MRI.

Dr. Goldsmith recommended non-certification. As grounds, he stated that there was no evidence of conservative treatment other than a course of physical therapy. In addition, he found no evidence of a physical exam, and the MRI report did not identify whether it was the right or left knee. Further, meniscectomies are not recommended for older patients with degenerative tears and arthritis since it might accelerate the arthritic process. Dr. Frazier appealed the non-certification to Dr. Robert Snyder, the Bureau's Medical Director. Dr. Snyder agreed with Dr. Goldsmith's opinion. As a result, Praxis denied the surgery.

Following the denial, Mr. Jackson returned to Dr. Frazier. He observed that Mr. Jackson's pain was worsening and that he suffered from "catching" in his knee with activities and a "give-way" sensation when on stairs. Dr. Frazier felt Mr. Jackson's condition was deteriorating, and on July 9 he recommended a chondroplasty before a partial arthrotomy became necessary.

That same day, Praxis sent Dr. Frazier's recommendation to Dr. Goldsmith. Upon review, Dr. Goldsmith recommended non-certification of the request for right-knee chondroplasty. Dr. Goldsmith noted there was no progress note from Dr. Frazier that documented a physical examination. He felt the MRI report did not show a chondral lesion, but generalized arthritic change. He wrote that the ODG stated that "arthroscopic lavage and debridement in patients with osteoarthritis of the knee is no better than placebo surgery[.]" However, he also noted the ODG listed four criteria for chondroplasty: (1) Failure of conservative care; (2) subjective findings noting joint pain, swelling, and mechanical catching; (3) objective findings of swelling, crepitus or limited range of motion; and, (4) an MRI that showed a large, unstable chondral defect.

2

Dr. Frazier appealed to Dr. Snyder, who again agreed with Dr. Goldsmith that the medical evidence did not indicate a need for right-knee arthroscopy, chondroplasty and debridement.

**Findings of Fact and Conclusions of Law**

Mr. Jackson need not prove every element of his claim by a preponderance of the evidence to obtain relief at an expedited hearing. Instead, he must present sufficient evidence that he is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Here, the only issue is whether Mr. Jackson established the likelihood of prevailing at trial as to the need for the knee surgery recommended by Dr. Frazier. Praxis argued that the opinions in Dr. Frazier's records were too conclusory and vague to justify an order requiring surgery and that a deposition was necessary to explore his opinion. The Court disagrees. Mr. Jackson's history and physical examination revealed consistent knee abnormalities that medication, bracing and physical therapy failed to correct. Indeed, the records showed that Mr. Jackson's knee condition rapidly worsened. An MRI confirmed significant problems. Dr. Frazier felt that, given the failure of conservative treatment, a chondroplasty and debridement were recommended not only to alleviate Mr. Jackson's symptoms but also to stave off the need for a partial knee arthrotomy. The records containing Dr. Frazier's opinions, and his justification for them, are sufficient for the Court to determine the likelihood of Mr. Jackson prevailing as to the need for surgery.

As the authorized treating physician, Dr. Frazier's opinion concerning treatment is entitled to a presumption of correctness. Tenn. Code Ann. § 50-6-204(a)(3)(H).[1] Thus, the burden falls on Praxis to rebut his opinion. To meet its burden, Praxis offered Dr. Goldsmith's utilization review reports, which clearly conclude that surgery is unnecessary, and Dr. Snyder's agreement with those reports.

The Court "has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Bass v. The Home Depot*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017). When opinions conflict, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Id.*

---

[1] Praxis argued that the definition of authorized treating physician contained within the Bureau's regulations could be construed to make the Medical Director an "authorized" physician as well. While the argument is novel, Dr. Snyder was not chosen from a panel, nor can the Court consider him to have provided treatment. The Court declines to extend the definition of authorized treating physician to include Dr. Snyder.

3

In this case, a number of factors serve to lessen the weight the Court gives Dr. Goldsmith's opinions. First, unlike Dr. Frazier, he did not treat or even examine Mr. Jackson. *See, Ledford v Mid Georgia Courier, Inc.*, 2018 TN. Wrk. Comp. App. Bd. LEXIS 28 at *8 (June 4, 2018). Second, it appears from his April 23 report that Dr. Goldsmith did not have all of Mr. Frazier's medical records when he made his assessment. He stated the MRI did not specify whether it was the right knee or the left knee, but the actual report made it clear that it was the right knee. He also stated that Mr. Jackson did not undergo conservative treatment other than physical therapy, but the records establish he received braces, steroid injections, and medication.

Dr. Goldsmith cited ODG criteria to support his non-certification; however, Mr. Jackson's situation actually appears to have met those guidelines. For example, he underwent every form of conservative treatment listed by the ODG, had popping and clicking in his knee, had a positive McMurray's test, and a positive MRI. The Court is hard-pressed to see from the record how Mr. Jackson's situation does not fit within the ODG criteria. Finally, Dr. Goldsmith does not offer an alternative to surgery to relieve Mr. Jackson's symptoms.

Dr. Goldsmith's primary issue appears to be the possibility that Mr. Jackson's underlying osteoarthritis will not be helped, and might actually be exacerbated, by surgery. While perhaps a valid point, the Court does not find it sufficient to override Dr. Frazier's concern about Mr. Jackson's continuing, debilitating symptoms and the possibility he might soon require a partial knee arthrotomy if he does not have the recommended surgery.

Of course, that does not end the query. Dr. Snyder supported Dr. Goldsmith's opinions by denying Dr. Frazier's appeals. However, for the reasons stated above, the Court cannot find that Dr. Snyder's brief statement of denial, made without elaboration, outweighs Dr. Frazier's opinion and the presumption given it, even when combined with Dr. Goldsmith's opinion. *See Ledford* at *8.

IT IS, THEREFORE, ORDERED that:

1. Praxis shall authorize Dr. Frazier to provide reasonable and necessary treatment for Mr. Jackson's right knee injury, including but not limited to the surgery he recommended.

2. This matter is set for a Scheduling Hearing on January 14, 2018, at 10:00 a.m. C.S.T. The parties or their counsel must call 615-253-0010 or toll-free at 855-689-9049 to participate in the hearing. Failure to call may result in a determination of the issues without the party's participation.

4

**ENTERED November 28, 2018.**

_[signature]_

**JUDGE ROBERT V. DURHAM**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical Record

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Transfer Order
5. Notice of Expedited Hearing

Exhibits

1. Documents submitted by Praxis
2. Documents submitted by Mr. Jackson
3. Mr. Jackson's affidavit and attached medical records
4. Medical records with chronology

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on November 28, 2018.

| Name | Certified Mail | Email | Service sent to: |
| --- | --- | --- | --- |
| Edward Martindale Rachal Wallace | | X | edwardmartindale@gmail.com rachalwallace@gmail.com |
| Dean Norris Christi Thomas | | X | Dean.norris@zurichna.com Christi.thomas@zurichna.com |

_[signature]_

**Penny Shrum, Court Clerk**
**Court of Workers' Compensation Claims**

5



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**EXPEDITED HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

Docket #: _____

State File #/YR: _____

**Employee** _____

v.

_____
**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals
Board. [List the date(s) the order(s) was filed in the court clerk's office]

**Judge** _____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## Additional Information

**Type of Case** [Check the most appropriate item]

    ☐ Temporary disability benefits
    ☐ Medical benefits for current injury
    ☐ Medical benefits under prior order issued by the Court

## List of Parties

**Appellant (Requesting Party):** _____ At Hearing: ☐Employer ☐Employee

Address: _____

Party's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____  SF#: _____  DOI: _____

## Appellee(s)

**Appellee (Opposing Party):** _____ At Hearing: ☐ Employer ☐ Employee

Appellee's Address: _____

Appellee's Phone: _____ Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Expedited Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____day of_____, 20___

[Signature of appellant or attorney for appellant] _____



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____  2. Address: _____

3. Telephone Number: _____  4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

_____  Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $_____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

| | | |
|---|---|---|
| Automobile | $ _____ | (FMV) _____ |
| Checking/Savings Acct. | $ _____ | |
| House | $ _____ | (FMV) _____ |
| Other | $ _____ | Describe:_____ |

11. My debts are:

Amount Owed                To Whom

_____     _____

_____     _____

_____     _____

_____     _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                       RDA 11082